ACE WIRE & CABLE CO., INC., et al., Appellants, v AETNA
CASUALTY & SURETY COMPANY, Respondent.

Second Department, October 18, 1982

APPEARANCES OF COUNSEL

*Leonard M. Simon, P. C. (Peter R. Silverman* of counsel),
for appellants.

*Hendler & Murray (Michael Maillet* and *Jerome Murray*
of counsel), for respondent.

OPINION OF THE COURT

GULOTTA, J.

In this action on an insurance policy to recover for losses
allegedly sustained by the plaintiffs due to a theft of
inventory committed by unidentified employees, plaintiffs
moved to strike the defendant's answer denying liability
and for summary judgment, whereupon the defendant
cross-moved for summary judgment dismissing the com-
plaint. From an order denying their motion and granting
the defendant's cross motion, plaintiffs appeal.

The issue presented for our determination is whether the
plaintiffs have established the existence of a triable issue
of fact regarding the sufficiency of their claim in view of

the specific exclusion contained in section 2(b) of the underlying contract of insurance. In our view, this question must be answered in the affirmative.

Plaintiffs discovered the loss in issue (more than 100 reels of cable and wire, most of which were at least four feet in diameter and weighed in excess of 5,000 pounds) on or about June 25, 1979 during a physical stock inspection of their Staten Island warehouse. The loss was thereupon reported to the defendant, which denied liability based on the exclusionary language contained in section 2(b) of the policy. This action followed.

It is not disputed that at the time of the alleged theft, plaintiffs had in effect with the defendant a policy of "Comprehensive Dishonesty, Disappearance and Destruction" insurance, pursuant to which the defendant agreed to insure the plaintiffs against any "Loss of money, Securities and other property which the insured shall sustain * * * through any fraudulent or dishonest act or acts committed by any of [its] Employees, acting alone or in collusion with others." Excluded from coverage, however, by section 2(b) of the policy was any "loss, or that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation", provided that if the alleged loss was caused by one or more unidentified employees "the insured shall nevertheless have the benefit of [the] Insuring Agreement * * * [where] the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees".

Plaintiffs alleged in support of the instant motion that the exclusion contained in section 2(b) of the policy was inapplicable to the present loss, as they do not purport to rely upon an "inventory computation" to establish their loss, but rather, *inter alia,* on "stock records", which are defined in the moving papers as "written record[s] * * * concerning the whereabouts and identification of each reel of wire and cable that the plaintiffs maintain". In addition, the plaintiffs alleged that the loss could only have been caused by employee dishonesty due to (1) the intricate security system which they maintain at their Staten Island

warehouse, (2) the absence of any signs of forcible entry during the period in question, and (3) the enormous size and weight of most of the missing reels, which precluded their being stolen by anyone unfamiliar with the operation of the specialized machinery necessary to remove and transport them. As has already been indicated, Special Term rejected the plaintiffs' position and granted summary judgment in favor of the defendant. We cannot agree.

With all due deference to the Justice presiding at Special Term, it is our belief that the supporting affidavits of the corporate secretary of the plaintiff Ace Wire & Cable Co., Inc. (Louis Deutsch) are legally sufficient to raise a triable issue of fact regarding the sufficiency of the plaintiffs' claim, as it appears from the moving papers (the truthfulness of which must be accepted for the purposes of this motion) that their claim regarding at least a substantial percentage, in value, of the items in issue is not dependent upon either an "inventory computation" or a "profit and loss computation", but rather, *inter alia,* upon the "personal observation" by Mr. Deutsch of specific, serially numbered reels of wire at their Staten Island warehouse on June 30, 1978; his "personal observation" that those same specific serially numbered reels of wire were missing from the Staten Island warehouse on June 25, 1979; and his "personal knowledge" that none of the afore-mentioned reels of wire had been sold, removed or otherwise disposed of with the permission, knowledge or consent of the plaintiffs during the intervening year. Thus, in his reply affidavit Mr. Deutsch avers:

"I fail to see how The Aetna Casualty and Surety Company can claim in good faith that the plaintiffs rely upon an inventory computation to establish their loss as a result of employee dishonesty. Neither the plaintiffs nor myself have relied upon a computation of any nature as a factor in determining and/or establishing that our loss of over 100 reels of wire and cable was due exclusively to employee dishonesty. The stock records that *I* have maintained for 30 years amount to nothing more than a written record that I have kept concerning the whereabouts and identification of each reel of wire and cable that the plaintiffs maintain at the Davidson Street warehouse. I state of my own

*personal knowledge* that the missing reels that are the subject of this claim were present and accounted for at the Davidson Street warehouse in June of 1978. I am able to do so, because I *personally reviewed* each and every reel of wire and cable at the Davidson Street warehouse in June of 1978 and verified that all such reels that are referred to in my stock records were accounted for. Furthermore I state of my own *personal knowledge* that the reels of wire and cable which are the subject of this lawsuit were not on the premises of the Davidson Street warehouse when I *inspected* those premises in June of 1979 and none of those reels were removed during the 12 month preceding period with the permission, knowledge or the consent of the plaintiffs or any of their officers * * *

"In paragraph 17 of my previous affidavit I gave an example of our loss by referring to the largest single item of wire and cable which was removed from the Davidson Street premises. Further amplification of this portion of our loss will indicate the irrelevancy of the defendant's claim of 'inventory computation'.

"In June of 1975 the Kaiser Aluminum Company shipped 20 reels of wire to the plaintiffs known as 600 MCM XLP. Of the 20 reels shipped, 19 were stored at plaintiffs' Staten Island warehouse facility at 60 Davidson Street. Upon receipt of these reels, I made an entry on a separate stock record card identifying each reel separately by the number of feet, name of manufacturer and additionally *by assigning an internal identification number* to each such reel. This information, and in addition, other information that was furnished by Kaiser Aluminum was physically posted on the reel itself that was stored in the Staten Island warehouse.

"Annexed hereto as Exhibit 'A' are 3 bills of lading that were received from Kaiser together with the delivery of the aforesaid 20 reels of wire and cable. The bottom portion of such bills of lading identify each reel separately by number of feet and a serial number assigned by Kaiser, which information was stapled to each reel of wire. Also indicated is the size of each reel being either 6 feet or 4½ feet high and the aggregate gross weight of the reels in question, between 4,000 and 5,000 pounds for each reel.

"This type of wire proved to be an extremely slow moving item for the plaintiffs. Of the 19 reels that were maintained in the Staten Island warehouse since June, 1975, only 4 were subsequently sold. The remaining 15 reels remained as something askin [*sic*] to a white elephant which simply would not go away. In June of 1978, as was my custom each year, I participated in a physical inspection of our inventory at Staten Island and I *personally observed* the remaining 15 reels of 600 MCM XLP to be present and accounted for. I determined this not by counting the 15 reels, *but by reference to the internal identification number and other information referred to above that was listed on each respective reel.* In the following 12 months the remaining 15 reels of 600 MCM XLP continued to be a white elephant, there having been no orders for the same. In June of 1979 when I returned to the Davidson Street warehouse not one of these huge reels of wire remained. *All had been removed without permission and/or authority of the plaintiffs, without break-in to our premises and by a person who knew that these reels would not be missed and who was able to remove the same by use of a hi-lo machine.*

"As indicated by the foregoing example, I have used no inventory computation to determine the amount of a loss or that a loss took place. The simple fact is that the goods were present in June 1978, they were not present in June 1979 and only an employee with knowledge of our business could have removed the same." (Emphasis added.)

In our view, a loss established by such personal observation and knowledge would be readily distinguishable from a loss established solely by reference to perpetual inventory records and a "unit reconciliation" of the existing physical inventory with the totals reflected therein (see, e.g., *Teviro Casuals v American Home Assur. Co.,* 54 NY2d 915; *American Thermostat Corp. v Aetna Cas. & Sur. Co.,* 59 AD2d 965, mot for lv to app den 43 NY2d 647; *Kaplan Jewelers v Insurance Co. of North Amer.,* 86 Misc 2d 334; *Dunlop Tire & Rubber Corp. v Fidelity & Deposit Co. of Maryland,* 479 F2d 1243), and is much closer conceptually to the proof of loss sustained in *Popeo v Liberty Mut. Ins. Co.* (369 Mass 781), i.e., testimonial evidence by a materi-

als control manager that he helped to put particular items of property into a locked enclosure to which only employees had access, and that sometime later they were gone. As the court remarked in that case by way of analogy (*supra,* p 785): "If the owner of an automobile locks it in a garage and later finds the garage empty, it would be an unwarranted strain on the language to say that he had made an 'inventory computation.'"

So, too, here, the plaintiffs' claim of loss would not appear to be wholly dependent upon an "inventory computation" as the defendant maintains, but rather, *inter alia,* upon a specific enumeration of several of the missing items, reel by reel, based upon personal knowledge and a check of the inventory stock records against the individual items actually remaining on hand (cf. *Sun Ins. Co. of N. Y. v Cullum's Men Shop,* 331 F2d 988). Under such circumstances, the role of the stock records would be reduced to that of "refreshment" material (i.e., a writing employed to "refresh" the recollection of a witness) or a "past recollection recorded" (see Richardson, Evidence [Prince, 10th ed], § 465 *et seq.*), but would not be the primary or the sole evidence relied upon to establish the plaintiffs' loss. Moreover, the dollar amount of the plaintiffs' loss has apparently been computed, at least in part, from "purchase" rather than "inventory" records (see *Popeo v Liberty Mut. Ins. Co., supra*).

Accordingly, while not legally sufficient to warrant the entry of summary judgment in the plaintiffs' favor, it is our belief that the moving and reply affidavits of Mr. Louis Deutsch *are* legally sufficient to establish the existence of a triable issue of fact regarding the plaintiffs' right to recover at least a portion of their claimed losses under the terms of the defendant's policy, and to require a trial at which the various issues, including, *inter alia,* the question of whether the plaintiffs' claim is in fact dependent solely upon an "inventory computation" may be fully explored and determined. The defendant's cross motion for summary judgment must therefore be denied.

MANGANO, J. (dissenting). I would affirm the order appealed from. It has been consistently held that an insured may not prevail on an insurance claim for loss caused by

employee dishonesty when the claim is based solely on an inventory computation (*Teviro Casuals v American Home Assur. Co.,* 81 AD2d 814, affd 54 NY2d 915). In my view, the proof adduced by the plaintiffs in the case at bar was a "unit reconciliation of stock" (see *Teviro Casuals v American Home Assur. Co.,* 81 AD2d 814, 815, *supra*), which has been clearly held to be nothing more than an inventory computation (*supra*). In the absence of any independent evidence that the loss was caused by employee fraud or dishonesty, plaintiffs' complaint must be dismissed (see *Teviro Casuals v American Home Assur. Co., supra;* see, also, *American Thermostat Corp. v Aetna Cas. & Sur. Co.,* 59 AD2d 965, mot for lv to app den 43 NY2d 647).

MOLLEN, P. J., DAMIANI and LAZER, JJ., concur with GULOTTA, J.; MANGANO, J., dissents and votes to affirm the order, with an opinion.

Order of the Supreme Court, Queens County, entered September 22, 1981, modified by deleting the second, third and fourth decretal paragraphs and substituting a provision denying defendant's cross motion for summary judgment. As so modified, order affirmed, with $50 costs and disbursements to plaintiffs.